NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
THOMAS KOSTKA,                      :
:
      Plaintiff,            :    Civil No. 04-2974 (AET)
:
  v.                                :    MEMORANDUM & ORDER
:
COMMISSIONER OF                     :
SOCIAL SECURITY,                    :
:
      Defendant.            :
_____ :

THOMPSON, U.S.D.J.

      This matter comes before the Court on the appeal of claimant Thomas Kostka ("Plaintiff") from a final administrative decision by Defendant Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim for benefits under Titles II and XVI of the Social Security Act. This Court has jurisdiction to decide this matter pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the decision of the Commissioner will be affirmed.

## BACKGROUND

      On September 24, 2001, Plaintiff filed an application for disability insurance benefits. (R. at 77-79.)[1] Plaintiff alleged disability based upon injuries sustained in a motor vehicle accident on March 2, 2001. (R. at 12 and 77.) Symptoms included daily headaches, intermittent blurred vision, occasional confusion, neck pain that radiated down his arms, numbness in his right fingers, and low back pain that radiated down his legs. (R. at 12.) In October 2001, Plaintiff also

---

[1] Page citations to the record are to the transcript of the administrative record filed by the Commissioner as part of her answer.

complained of pain and frequent "give away" in his right knee. (R. at 13.) Plaintiff was diagnosed with an anterior cruiciate ligament tear and a medial meniscus tear in his right knee. Id. He was considered a candidate for arthroscopic surgery, id., which was performed on or about January 15, 2002. (R. at 308.) On June 25, 2001, Plaintiff underwent gastric bypass surgery. (Pl.'s Br. 5.) Prior to this surgery, Plaintiff weighed in excess of 350 pounds. (R. at 149.) Plaintiff continued to seek treatment for neck and back pain during 2001 and 2002. (R. at 13-14.)

Plaintiff's initial application for benefits was denied. (R. at 52.) Plainitiff sought reconsideration, which also was denied. (R. at 59.) Plaintiff then requested a hearing before an administrative law judge ("ALJ"), (R. at 62.), which was held on October 21, 2003. The testimony revealed that Plaintiff stands 5' 9" tall and weighs 190 pounds, (R. at 25), however additional testimony and medical records show that the Plaintiff did not lose appreciable weight until after the gastric bypass surgery. (R. at 42, 148, 158,166, 204, and 234.) Plaintiff further testified that he was able to drive a car, work on a computer, visit friends, and attend church. (R. at 28-31.) At the time of the hearing, Plaintiff suffered from migraines, tension headaches, balance problems, vision problems, jaw pain, depression, neck and back pain, tendonitis in his wrists (or carpal tunnel syndrome), loss of feeling in three fingers, right knee pain (for which he wears a brace), and loss of feeling in his shin and foot. (R. at 31-37.) During the testimony, the ALJ asked Plaintiff "[w]hat do you think is the main thing that would keep you from working . . . ?" (R. at 39.) Plaintiff replied "I think it's everything. . . . The headaches. . . [a]nd the use of my knee." Id. During examination by Plaintiff's attorney, it was further disclosed that Plaintiff did not sleep well and required rest stops on drives over 30 minutes. (R. at 40.) Plaintiff also testified about side effects from his gastric bypass surgery. (R. at 42.)

On February 26, 2004, the ALJ ruled that Plaintiff was not disabled. (R. at 7.) In his ruling, the ALJ found that Plaintiff satisfied the first and second steps of the five-step analysis set out at 20 C.F.R. § 404.1520. (R. at 11.) At the third step, the ALJ decided that a determination could not be made on medical considerations alone, id., therefore, the ALJ proceeded to steps four and five, namely, determining Plaintiff's residual functional capacity ("RFC") and evaluating if he could perform work which exists in significant numbers in the national economy. Id. Based on the record and the testimony of a vocational expert, the ALJ concluded that the Plaintiff could not perform any of his past relevant work, (R. at 17), but he did conclude, based on the Plaintiff's age, experience, education and background, and on records from by Plaintiff's treating physicians, that Plaintiff's impairments, although severe, still permitted Plaintiff to perform sedentary work. (R. at 17-18.) The ALJ concluded that Plaintiff could make the necessary occupational adjustments to perform work in this category, which exists in significant numbers in the national economy. Id.

Plaintiff sought review by the Appeals Council, which upheld the ALJ's decision on April 30, 2004. (R. at 3.) Plaintiff now appeals the Commissioner's decision, and asks this Court to remand the matter to the Commissioner for further development of the record.

## DISCUSSION

I.      Standard of Review

A court applies plenary review to the Commissioner's application of law. Markle v. Bamhart, 324 F.3d 182, 187 (3d Cir. 2003). The Commissioner's findings of fact, however, are reviewed to determine "whether there is substantial evidence to support such findings." Id. A court is required to review the entire record when making those determinations. Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence is "more than a mere scintilla. It

3

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).  The Court must affirm the Commissioner's decision if it is supported by substantial evidence.  42 U.S.C. §§ 405 (g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).  The Commissioner's decision is afforded a great amount of deference; a court should not "set the decision aside if it is supported by substantial evidence, even if [it] would have decided the factual inquiry differently."  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

II.     Commissioner's Disability Analysis

Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(2)(A).  An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is . . . unable to do his previous work . . . [and] cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id.  The Social Security Administration has promulgated a five-step evaluation process to determine whether an individual is disabled.  See 20 C.F.R. § 404.1520; see generally Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  In step one, the Commissioner decides whether the claimant is currently engaging in substantial gainful activity.  If so, the claimant is not eligible for disability benefits.  20 C.F.R. § 404.1520(a).  In step two, the Commissioner determines whether the claimant is suffering from a severe impairment.  If the impairment is not "severe," the claimant is not eligible for disability benefits.  20 C.F.R. § 404.1520(c).  If the Commissioner finds that the claimant has a "severe" impairment in the second

step, he will move to step three. Id. In step three, the Commissioner determines whether the medical evidence indicates that the impairment is equivalent to an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. If so, the claimant is automatically eligible for benefits. In step four, the Commissioner reviews whether the claimant retains the "residual functional capacity" to perform his past relevant work. "'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Hartranft, 181 F.3d at 359 n.1 (citing 20 C.F.R. § 404.1545(a)). If a claimant can perform his past relevant work, he is not eligible for disability benefits. 20 C.F.R. § 404.1520(f). Finally, in step five, the Commissioner considers whether other work exists in significant numbers in the national economy that the claimant can perform given his medical impairments, age, education, past work experience, and residual functional capacity. Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002) (citing Plummer, 186 F.3d at 428). If there is such work, the claimant is not eligible for benefits. 20 C.F.R. § 404.1520(g)(1). In this final step, "the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in order to deny a claim of disability." Plummer, 186 F.3d at 428.

    A. Social Security Ruling 02-1p

On October 25, 1999, the Social Security Administration rescinded listing 9.09, obesity, from the listing of impairments. See 64 Fed. Reg. 46,122 (Aug. 24, 1999). The Commissioner thereafter published Social Security Ruling ("SSR") 00-3p, 65 Fed. Reg. 31,039 (May 15, 2000), to provide guidance on disability claims involving obesity. SSR 00-3p was superceded by SSR 02-1p, see 67 Fed. Reg. 57,859 (Sept. 12, 2002), without any substantive changes. See Rutherford v. Barnhart, 399 F.3d 546, 552 n.4 (3d Cir. 2005).

SSR 02-1p provides guidance on how to address obesity in the Commissioner's five-step analysis. At step two, obesity will constitute a severe impairment when, either by itself or in combination with another impairment, "it significantly limits an individual's physical or mental ability to do basic work activities." 67 Fed. Reg. at 57,862. At step three of the analysis, the Commissioner must determine if the claimant's obesity meets or equals the requirements of a listing, or if "there is an impairment, [or multiple impairments which,] in combination with obesity, meets the requirements of a listing." Id. At step four, the Commissioner should assess the effect obesity has on an "individual's ability to perform routine movement and necessary physical activity within the work environment." Id.

III.     Analysis

Plaintiff claims the ALJ erred because he failed to develop a record demonstrating that he took Plaintiff's obesity into account when he evaluated Plaintiff's impairments. Plaintiff further argues that the ALJ was obligated to consider Plaintiff's obesity at step four of the five-step analysis when he made his RFC determination, but did not do so.

   A.   Requirement to show consideration of obesity in record

As a preliminary matter, this Court finds that there is substantial evidence to support the ALJ's conclusion that Plaintiff maintains the RFC to perform sedentary work and, therefore, is not disabled. It is within the ALJ's discretion to evaluate the credibility of the Plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence regarding the full extent of such symptoms. See LaCorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988). The findings of treating physicians in particular may be given substantial, even controlling, weight if they are supported by medically acceptable diagnostic techniques and are not inconsistent with

other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2); <u>Fargnoli</u>, 247 F.3d at 43. The ALJ considered numerous medical and pyschological records in rendering his decision, including records and treatment notes from several treating physicians, and in particular, those of Drs. Kahn, Campagnolo, and Abrams.  In addition, Dr. Kahn, one of Plaintiff's treating physicians, provided a Medical Assessment of Ability to Do Work Related Activities (Physical) dated November 23, 2003.  (R. at 512.)  Dr. Kahn determined that Plaintiff was able to lift ten pounds frequently, lift twenty pounds occasionally, and stand and/or walk for a total of four hours a day (two hours without interruption), and had no limitations with respect to sitting or environment.  (R. at 512-13.)  Because the ALJ's findings mirror the findings of the Plaintiff's treating physicians, including Dr. Kahn, it is clear that the ALJ relied on substantial evidence.

Notwithstanding these findings, and the evidence in the record, Plaintiff argues that the ALJ had an obligation to consider Plaintiff's obesity in the five-step analysis because the record contained references to Plaintiff's obesity.  Further, Plaintiff argues that the ALJ has a duty to develop the record with respect to a condition, even if the record does not fully represent it.  In effect, Plaintiff argues that the ALJ had a duty to consider not only the impairments claimed, but possible impairments that the claimant or his treating physicians did not raise, but may potentially be gleaned from an exacting and imaginative review of the record.

Plaintiff alleges that the ALJ was obligated to consider obesity because the "evidence should have alerted the ALJ that [Plaintiff] had another relevant impairment that could contribute to the cumulative effect of his other impairments."  (Pl.'s Br. 3.)[2]  An ALJ must consider

---

[2]     At the time of the hearing on October 21, 2003, Plaintiff stated that he stood five feet, eight inches in height and weighed one hundred and ninety pounds.  (R. at 25.)  Thus, it may not be to Plaintiff's benefit for the ALJ to consider his weight, and this Court will not remand a

impairments that the claimant says he or she has, or about which the ALJ receives evidence. Rutherford, 399 F. 3d at 553. But Plaintiff does not point to any instances where the treating or examining physician indicated that Plaintiff's weight was a factor in the Plaintiff's impairments claimed by the Plaintiff. The "evidence" relied upon by Plaintiff are instances in the record where Plaintiff's weight is noted, but the record does not contain any cognizable diagnosis of obesity or any objective medical evidence of Plaintiff's weight condition that relates to any disability.[3] In Rutherford, the claimant did not specify how obesity could be a factor in the five-step analysis, and made only an assertion that her weight made it more difficult to stand, walk, and manipulate her hands and fingers. 399 F.3d at 553. The Third Circuit held that this general assertion was not enough to require a remand, particularly when the ALJ relied on "voluminous medical evidence." Id. Similarly, the ALJ in the instant case had no diagnosis of obesity, and was confronted only with sporadic references to obesity in Plaintiff's medical records. This level of presentation is insufficient to have put the ALJ on notice that Plaintiff's obesity was a factor that should have been considered in combination with his claimed impairments. See Rutherford, 399 F.3d at 553; see also Sassone v. Comm'r, 165 Fed. App'x 954, 958 (3d Cir. 2006) (no duty to consider obesity without diagnosis of obesity or evidence of weight contributing to disability); Cefalu v. Barnhart, 387 F. Supp. 2d 486, 495 (W.D. Pa. 2005) (failure to mention psychological evaluation not sufficient for remand); Santiago v. Barnhart, 367 F. Supp. 2d 728, 734 (E.D. Pa. 2005) (no

---

case for consideration of facts that will not affect the outcome. Rutherford, 399 F.3d at 553 (relying on Skarbek v. Barnhart, 390 F.3d 500 (7th Cir. 2004)).

[3] Only one reference to "morbid obesity" appears in the record, a notation on an Emergency Department Triage/Nursing Assessment made at Southern Ocean County Hospital on March 2, 2001, in connection with Plaintiff's automobile accident on that date. (R. at 139.)

requirement to consider obesity where no evidence that weight exacerbated an impairment, and medical notes only described claimant as "heavy" and "overweight").

Even if the evidence were more clearly presented, Rutherford makes clear that it is not necessary for the ALJ to make specific findings with respect to the potential effects of obesity if the condition was known to the treating physicians upon whose opinions the ALJ relies. Rutherford, 399 F.3d at 553.  Plaintiff's own argument demonstrates that Plaintiff's physicians were aware of Plaintiff's alleged weight problems from 2001 to 2003.  Because the ALJ adopted their findings, which were made with full recognition of the Plaintiff's weight, the ALJ is deemed to have indirectly considered Plaintiff's weight. Id.; see also Sassone, 165 Fed. App'x at 958; accord Balanian v. Barnhart, No. 03-5352, 2005 WL 2886215, at *2-3 (E.D. Pa. Nov. 1, 2005); Woods v. Barnhart, No. 05-0042, 2005 WL 1923551, at *1 (E.D. Pa. Aug. 8, 2005).

In support for his assertion that the ALJ had an obligation to consider unclaimed conditions and develop a record on them, Plaintiff relies on Prentice v. Apfel, a case where the ALJ did not discuss mental illness even though the record contained "ample evidence" of mental illness, including two diagnoses of depression.  11 F. Supp. 2d 420, 426 (S.D.N.Y. 1998).  This case is distinguishable because, in the instant case, there are only incidental references to obesity, and no cognizable diagnosis of obesity.  On the issue of the ALJ's duty to develop a record, Plaintiff cites to Sobolewski v. Apfel, where the district court ordered a remand, but the court did so because there were gaps in the administrative record.  985 F. Supp. 300, 314 (E.D.N.Y. 1997).  The district court went on to state that remand was particularly appropriate in cases, such as the case before it, where the reviewing court is unable to fathom the Commissioner's rationale in relation to the evidence in the record.  Id.  Sobolewski is inapposite because there are no palpable gaps in

Plaintiff's record with respect to any potential impairment, and the Commissioner's rationale is not unfathomable.

    B.  Requirement to consider obesity in RFC determination

Plaintiff argues that the ALJ was obligated to consider Plaintiff's obesity when he made his RFC determination, but did not do so.  This argument is erroneous for two reasons.  First, as noted above, an ALJ need not consider obesity if he or she credits the report of a treating physician who was aware of a claimant's obesity.  Rutherford, 399 F.3d at 553.  Second, SSR 02-1p states that functional limitations resulting from obesity will be considered in the RFC determination if obesity was identified as a medically determinable impairment. 67 Fed. Reg. at 57,863.  The burden is on Plaintiff to show that he is suffering from an impairment, see Plummer, 186 F.3d at 428, yet the record is devoid of any attempt by Plaintiff to show that his obesity was a medically determinable impairment or a factor in other impairments.  Without that predicate finding, or sufficient facts in the record to show the existence of an impairment, see Rutherford, 399 F.3d at 553, the ALJ is not obligated to consider obesity when making a RFC determination.

## CONCLUSION

For these reasons,

    It is on this  28th  day of June, 2006,

    ORDERED that the decision of the Commissioner is AFFIRMED; and it is further

    ORDERED that the case is CLOSED.

          /s/ Anne E. Thompson
        ANNE E. THOMPSON, U.S.D.J.